United States District Court
Southern District of Texas
**ENTERED**
September 28, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LNY 5003 LLC, *et al*, | § | CIVIL ACTION NO. |
| Plaintiffs, | § | 4:20-cv-2992 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| ZURICH AMERICAN | § | |
| INSURANCE | § | |
| COMPANY, | § | |
| Defendant. | § | |

OPINION AND ORDER GRANTING
MOTION TO DISMISS

The motion by Defendant Zurich American Insurance Company to dismiss this action is granted. Dkt 35.

1.  Background

Defendant Zurich American Insurance Company issued an "all risks" insurance policy to Plaintiffs Fertitta Entertainment Inc and Fertitta Hospitality LLC, who are referred to together as the *Fertitta entities*. The policy covered seventeen international restaurants for the period of May 31st of 2019 to the same date in 2020. Dkts 32 at ¶ 6 (amended complaint) & 35-1 (insurance policy). Most are steakhouses owned by the related entity Morton's of Chicago Inc. Of the covered restaurants, seven are in Canada, three are in China, three are in Hong Kong, and one is in each of Taiwan, Macau, Singapore, and Mexico. Dkt 11-2 at 4.

The Fertitta entities claim that all of these restaurants suffered losses due to the COVID-19 pandemic in 2020 as a result of "the public's fear of the coronavirus, the various government shut-down orders, and the coronavirus itself."

Dkt 32 at ¶ 61. They consequently submitted a notice of loss under the policy in April 2020. Id at ¶ 114. Zurich rejected coverage, asserting that it would "deny all COVID-19 related claims made under those policies." Ibid.

The Fertitta entities putatively assigned the policy to LNY 5003 LLC in July 2020, which brought this action against Zurich in Texas state court. Dkts 1-2 (original complaint) & 11-2 (putative assignment). Zurich removed to federal court the next month. Dkt 1. A motion by LNY to remand was denied upon finding that it wasn't a proper party to this action. See *LNY 5003 LLC v Zurich American Insurance Co*, 558 F Supp 3d 416 (SD Tex 2021). LNY then amended its complaint to add the Fertitta entities as plaintiffs. Dkt 32.

Zurich now moves to dismiss. Dkt 35.

### 2. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the Defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court holds that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ibid, quoting *Twombly*, 550 US at 556.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). The court must also generally limit itself to the contents of the pleadings and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014).

### 3. Analysis

Zurich moves to dismiss all claims. As to LNY, it asserts lack of subject-matter jurisdiction. Dkt 35 at 24. As to the Fertitta entities, it asserts failure to state a claim. Id at 11–23.

#### a. Lack of subject-matter jurisdiction

LNY remains in this action even after amendment to add the Fertitta entities. See Dkt 32. LNY's relationship to those entities was detailed by prior order denying the motion to remand. See 558 F Supp 3d at 417–19. As determined there, LNY isn't a party to the policy at issue, and so it isn't a proper party to this action. Id at 427; see also Dkt 35 at 24. LNY's response doesn't address this point, thus conceding it. See Dkt 36.

LNY's claims will be dismissed without prejudice for lack of subject-matter jurisdiction.

#### b. Failure to state a claim

The Fertitta entities cite seven provisions affording policy coverage to justify their claim for relief. These include business-income coverage, extra-expense coverage, civil-authority coverage, ingress/egress coverage, two

separate microorganism coverages, and "coverage for losses arising from 'Specified causes of loss,' including 'civil commotion.'" Dkt 32 at ¶¶ 54–60; see also id at ¶¶ 93–105.

The first six all require "physical loss or damage" to insured or nearby properties. Those provisions are addressed together, followed by consideration of the final provision regarding coverage where microorganisms result in a civil commotion.

i. Coverage requiring *physical loss or damage* to insured or nearby properties

The Fertitta entities assert that they "suffered direct physical loss of and damage to the restaurants as a result of the COVID-19 pandemic." Dkt 32 at ¶ 62. They specifically allege that the properties became "contaminated with the virus" via "droplets containing COVID-19." Id at ¶¶ 44, 63–65. Likewise, they allege that properties within two kilometers of the insured properties suffered physical loss and damage due to COVID-19 contamination, resulting in civil orders that forced the insured properties to close temporarily. Id at ¶¶ 56, 68, 78.

The policy defines neither *physical loss* nor *physical damage*. But it does state that all phrases in the policy "are intended to have their ordinary or common meaning." Dkt 35-1 at 38. The policy also states that disputes "concerning the meaning of words or phrases will be resolved using the most recently published version of *Webster's Unabridged Dictionary*." Ibid.

The Fifth Circuit in *Terry Black's Barbecue v State Automobile Mutual Insurance Company* addressed the definition of *physical loss* in a coverage-related COVID-19 context. 22 F4th 450 (5th Cir 2022). It first found that the adjective *physical* requires a tangible alteration to the insured property. Id at 455–56. It next found that *loss* refers to a deprivation of the insured property. Id at 456. And so it concluded that the ordinary and common meaning of *physical loss* requires "a tangible alteration or deprivation of property." Id at 458. The panel thus found that the policy at issue didn't provide coverage because the

4

COVID-19-related "civil authority orders prohibiting dine-in services at restaurants did not tangibly alter" the properties at issue. Ibid.

The Fifth Circuit hasn't defined *physical damage*, but the same definition of *physical* pertains. And *Webster's Unabridged Dictionary* defines *damage* as "loss or harm resulting from injury to person, property, or reputation." The ordinary and common meaning of *physical damage* thus requires a tangible harm to the insured property. Cf *Terry Black's*, 22 F4th at 458; see also Steven Plitt et al, *Couch on Insurance* § 148:46 (3d ed Westlaw).

The alleged harm here plainly doesn't qualify under either phrase. As more recently explained by the Fifth Circuit in *Ferrer & Poirot GP v Cincinnati Insurance Co*, "While COVID-19 has wrought great physical harm to people, it does not physically damage property within the plain meaning of 'physical.'" 36 F4th 656, 658 & n 13 (5th Cir 2022, *per curiam*) (collecting cases); see also *Terry Black's*, 22 F4th at 458; *Aggie Investments LLC v Continental Casualty Co*, 2022 WL 257439, *3 (5th Cir 2022); *Lamacar Inc v Cincinnati Casualty Co*, 2022 WL 227162, *5 (ND Tex) (collecting cases).

Argument that the insured properties were physically contaminated by COVID-19 is likewise unavailing. Dkt 36 at 11; see also Dkt 32 at ¶¶ 63–65. As Chief Judge Lee Rosenthal observed, the "contamination of objects or properties" by the coronavirus "is transient and does not physically alter them." *American Liberty Hospitality Inc v Continental Casualty Company*, 2022 WL 2669465, *2 (SD Tex). Instead, the alleged injury is (or was) wholly economic in nature. See *Terry Black's*, 22 F4th at 456.

The Fertitta entities cite certain lower court cases that have gone the other way. See Dkt 36 at 9–11 (collecting cases). But those decisions precede—and now conflict with—binding Fifth Circuit precedent in *Terry Black's*, *Ferrer & Poirot*, and *Aggie Investments*. Likewise, all decisions within the Southern District of Texas accord with Zurich's position. See *DZ Jewelry, LLC v Certain Underwriters at Lloyds* London, 525 F Supp 3d 793, 800–

01 (SD Tex 2021); Mt. *Hawley Insurance Co v Jamal & Kamal, Inc*, 550 F Supp 3d 432, 437 (SD Tex 2021); *R&J Entertainment, LLC v Houston Casualty Co*, 2021 WL 5232683 at *4 (SD Tex 2021); *University of Saint Thomas v Am Home Assurance3 Co*, 2021 WL 3129330 at *6 (SD Tex 2021); *Kennard Law, PC v Nat Fire Insurance Co of Hartford*, 2021 WL 2722793 at *2–3 (SD Tex 2021), *report and recommendation adopted*, 2021 WL 2712370 at *1 (SD Tex 2021); *Am Liberty Hospitality, Inc v Continental Casualty Co*, 2022 WL 2669465 at * 2 (SD Tex 2022).

In sum, the six provisions that require *physical loss or damage* to the insured or surrounding properties can't form the basis for relief. Claims based on such provisions will be dismissed.

### ii. Coverage due to *civil commotion*

A "covered cause of loss" is required to trigger coverage under the insurance policy. Dkt 35 at 15. The policy specifies that a *virus* falls into the category of a *microorganism*. Dkt 35-1 at 55. And *microorganisms* are not listed under "specified causes of loss." See Dkt 35-1 at 61. In fact, they are specifically *excluded* by enumeration in an "Excluded Causes of Loss" provision. Id at 55, 66–69. But that exclusion itself carves out certain exceptions. Dkt 35-1 at 69. And if such an exception applies, the insurer must pay the "portion of the loss or damage which was solely caused by the specified cause of loss." Ibid. "Riot or civil commotion" is one such "specified cause of loss." Dkt 35-1 at 61, 68–69.

The Fertitta entities argue that COVID-19 is a microorganism, and that it caused a *civil commotion* that resulted in covered losses or damages to the insured properties. Dkt 32 at ¶ 60; see also Dkt 36 at 14. The policy doesn't define *civil commotion*. Neither does *Webster's Unabridged Dictionary*. But the Fertitta entities observe that (i) *Webster's* includes definition of *civil* as "of or relating to citizens" and "of or relating to the state or its citizenry," and (ii) it includes definition of *commotion* as "a condition of civil unrest or insurrection" and "an agitated disturbance." They thus assert that, for purposes of

6

coverage, a *civil commotion* is "a state of confusion and panic amidst the general public." Dkt 36 at 15. And they argue that the exigencies of the COVID-19 pandemic meet this definition.

Textual analysis doesn't allow a party to simply select discrete definitions and mash them together in favor of a desired outcome. Judge Harold Leventhal of the DC Circuit once likened such a practice to "entering a crowded cocktail party and looking over the heads of the guests for one's friends." Antonin Scalia & Brian A. Garner, *Reading Law* § 66 at 377 (West 2012). Instead, a word or phrase must assume its "contextually appropriate ordinary meaning." Id at § 6 at 70. That is to say, the words surrounding a given word or phrase shape its actual, understood meaning. And so, the relation of these words—each to the others—matters. This is especially true where several words "are associated in a context suggesting that the words have something in common." Id at § 31 at 195. When that's the case, the words "should be assigned a permissible meaning that makes them similar." Ibid.

Such precepts fully accord with the policy's directive that words and phrases "are intended to have their ordinary or common meaning." Dkt 35-1 at 38. And here, the policy pairs *civil commotion* with *riot*. These words should therefore be construed towards a harmonized meaning. See Scalia & Garner, *Reading Law* at § 31. This is particularly true where the inclusive exemplars of "specified causes of loss" in the policy proceed on topics such as "Fire," "Explosion," "Smoke," in a list running from sub-parts (a) through (o) as joined together by *and* Subpart (g) within this list specifies "Riot *or* civil commotion" as joined by *or*. Dkt 35-1 at 61. This plainly indicates *riot* and *civil commotion* are of a similar nature.

Chief Judge Barbara Lynn of the Northern District of Texas came to the same conclusion in *Graileys Inc v Sentinel Insurance Co Ltd*, where—in analyzing an insurance provision identical to the one at hand—she held that "one should interpret civil commotion in light of the meaning of riot." 2021 WL 3524032, *3 (ND Tex); accord

*M&N Food Service LLC v Twin City Fire Insurance Company*, 2022 WL 1137311, *3 (D RI). And she concluded that coverage didn't exist because the alleged harm stemmed from orders responding to the COVID-19 public-health crisis, not "a riot or an analogous civil commotion." *Graileys*, 2021 WL 3524032 at *3; see also *Hamilton Jewelry LLC v Twin City Fire Insurance Company Inc*, 560 F Supp 3d 956, 964–65 (D Md 2021), citing *Hartford Fire Insurance Co, Hartford, Connecticut v War Eagle Coal Co*, 295 F 663, 665 (4th Cir 1924) (defining *civil commotion* as "uprising among a mass of people which occasions a serious and prolonged disturbance and an infraction of civil order, not attaining the status of war or an armed insurrection") & *Holiday Inns Inc v Aetna Insurance Co*, 571 F Supp 1460, 1467 (SDNY 1983) (noting *civil commotion* requires that "the agents causing the disorder [ ] gather together and cause a disturbance and tumult"); *Garces v Sentinel Insurance Co Ltd*, 2021 WL 2010357, *3 (CD Cal), citing *Hartford Fire Insurance Co*, 295 F at 665.

Judge Lynn's reasoning is sound. Available definitions in *Webster's Unabridged Dictionary* also support it. *Commotion* there has an alternative definition of "a condition of civil unrest or insurrection"—a definition that best harmonizes *civil commotion* with *riot*. It must also be kept in mind that the insurance policy between the parties is a legal document intended to contractually memorialize their legal rights. The phrase *civil commotion* in a legal context is ordinarily understood as a "public uprising by a large number of people who, acting together, cause harm to people or property." *Black's Law Dictionary* (11th ed 2019); see also Steven Plitt, et al, *Couch on Insurance* § 152:6 (noting that the "local nature of the perils of 'riot' or 'civil commotion' imparts occasional local or temporary outbreaks of unlawful violence").

COVID-19 didn't cause insurrections, public uprisings, or outbreaks of localized violence that damaged property—or at least, that's not what the Fertitta entities are alleging happened to its at-issue restaurants. As a result, the provision involving "Riot or civil commotion" can't form a

basis for relief under the exception to the microorganisms exclusion. Claims based upon it will be dismissed.

### iii.  Extra-contractual claims

The Fertitta entities bring extra-contractual claims for violations of the Texas Insurance Code. Dkt 32 at ¶¶ 127–144. But Texas law is clear—the insured generally can't recover for a statutory violation by the insurer if the insured has no right to the benefits at issue under the policy. *USAA Texas Lloyds Co v Menchaca*, 545 SW3d 479, 495 (Tex 2018). The same holds for common-law bad-faith claims. *State Farm Lloyds v Page*, 315 SW3d 525, 532 (Tex 2010).

The Fertitta entities can't plausibly allege coverage under the policy. As such, their extra-contractual claims fail as a matter of law. They will be dismissed.

### 4.  Potential for repleading

Rule 15(a)(2) states that a district court "should freely give leave [to amend] when justice so requires." The Fifth Circuit holds that this "evinces a bias in favor of granting leave to amend." *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006) (quotation marks and citation omitted). But the decision whether to grant leave to amend is within the sound discretion of the district court. *Pervasive Software Inc v Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 969 F3d 238, 248 (5th Cir 2020).

The Fifth Circuit affirms denial of leave to amend where "the unambiguous terms of the policy preclude coverage." *Terry Black's*, 22 F4th at 459–60; see also *Lamacar*, 2022 WL 227162 at *6 (same). Any amendment in such circumstance would be futile. So it is here. No conceivable set of facts or pleadings could bring the losses sustained by the Fertitta entities due to COVID-19 within the coverage available under the subject insurance policy.

The claims will be dismissed with prejudice.

5. Conclusion

The motion by Defendant Zurich American Insurance Company to dismiss is GRANTED. Dkt 35.

The motion by Zurich for leave to file notice of supplemental authority is GRANTED. Dkt 38; see also Dkt 39 (response). The Fifth Circuit issued a number of COVID-19-related opinions since the original close of briefing. The position of the parties on those decisions has been considered.

The claims by Plaintiff LNY 5003 LLC are DISMISSED WITHOUT PREJUDICE.

The claims by Plaintiffs Fertitta Entertainment Inc and Fertitta Hospitality LLC are DISMISSED WITH PREJUDICE.

A final judgment will issue separately.

SO ORDERED.

Signed on September 28, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

10